IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSEPH MCADAMS, JBM, LLC,
FLORIAN HOMM, ABSOLUTE
RETURN EUROPE FUND, LTD.,
THE LOYR FOUNDATIONS,
EUROPE CATALYST FUND, and
RICHARD SMYTH,

    Plaintiffs,

      v.

GREENBERG TRAURIG, LLP, and
ROBERT ALTENBACH,

    Defendants.

CIVIL CASE NO.
1:06-CV-1778-JTC

## O R D E R

This matter is currently before the Court on Defendants' motion to dismiss and for more definite statement [#12].  For the reasons below, Defendants' motion is **GRANTED**.

## I.    Background

Plaintiffs allege a claim of securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j.  Plaintiffs also bring state law claims for fraud, breach of contract, and breach of a guaranty.

### A.    Plaintiffs

Plaintiffs were investors and shareholders in UCAP, Inc, a now defunct corporation.  (Compl. ¶¶ 1, 5.)  UCAP, previously known as Lahaina

Acquisitions, Inc., conducted full-service residential mortgage lending through United Capital Mortgage Corporation ("UCMC"), its wholly owned subsidiary.  (Id. ¶ 12.)  William McCord, Dan Moudy, Lynn Bradley, and David Colwell (collectively "control persons"), non-parties to this action, operated and controlled UCAP.  (Id. ¶¶ 5, 10.)  A "warehouse" line of credit, guaranteed by McCord and later UCAP, funded UCMC's business.  (Id. ¶ 12.)

Plaintiffs filed a complaint for securities fraud against McCord, Moudy, Bradley, Colwell, and Moore Stephens Frost, PLC, UCAP's accounting firm, in the Western District of Arkansas.  See Amended Complaint, McAdams v. McCord, No. 6:06-CV-6020-RTD (W.D. Ark. filed May 17, 2006).  In that action, Judge Dawson dismissed Plaintiffs' amended complaint, and Plaintiffs filed a second amended complaint which is currently subject to a pending motion to dismiss.  See Second Amended Complaint, No. 6:06-CV-6020-RTD (W.D. Ark. filed Apr. 6, 2007).

Plaintiff McAdams and JBM invested $3,050,000 in UCAP from October 2001 through March 2003.  (Compl. ¶ 2.)  McAdams was a director of UCAP from October 2001 to September 2003.  (Id.)  Smyth invested $2,000,000 in UCAP in December 2003 by accepting UCAP stock to settle litigation claims.  (Id. ¶ 3.)  Homm, Absolute Return Fund, the Loyr Foundation, and Europe Catalyst Fund invested $6,180,000 in UCAP from

2

December 2001 to February 2004.  (<u>Id.</u> ¶ 4.)

    B.    <u>Defendants</u>

Greenberg Traurig is a large law firm, of which Altenbach is a partner.

(<u>Id.</u> ¶ 6.)  Altenbach was UCAP's "SEC counsel."  (<u>Id.</u> ¶ 32.)

    C.    <u>Plaintiffs' Allegations</u>[1]

Plaintiffs generally allege that UCAP's control persons, accounting

firm, and Defendants perpetrated an "ongoing, massive fraud" by publishing

false and misleading SEC filings, issuing misleading press releases, and

engaging in a "pump and dump" scheme using UCAP's stock.  (<u>Id.</u> ¶¶ 10-11,

14-16.)  Plaintiffs allege that Defendants "assisted" the control persons in (1)

issuing UCAP shares and warrants to the control persons at below market

prices, (2) engaging in shame real estate transactions, (3) changing stock

option prices and exercise dates, (4) preparing and issuing false and

misleading press releases and financial statements, and (5) engaging in

insider trading.  (<u>Id.</u> ¶ 17.)

    *1.    Stock Transactions*

In January and February 2003, Defendant Greenberg "assisted" UCAP

---

[1]The Court has set out the facts alleged in the Complaint as best it could. Because Plaintiffs' factual allegations are lacking in detail and poorly organized, it was difficult for the Court to lay them out in an organized manner.  In many instances, it was difficult for the Court to determine exactly what events occurred, how they occurred, and what individuals or parties performed them.

and the control persons in issuing five million shares of UCAP stock, despite filing documents with the SEC that misstated UCAP's true financial condition.  (Id. ¶ 18.)  Defendant Altenbach devised a plan to avoid SEC requirements for registration of stock by using a fraudulently created consulting agreement.  (Id. ¶¶ 19, 20.)  UCAP issued the shares to insiders who then resold the stock to the market.  (Id. ¶ 21.)  During the time this stock was issued and sold, UCAP's financials "were seriously flawed."  (Id. ¶ 22.)  UCAP issued over thirty million shares with opinion letters drafted by Defendants, including over 400,000 shares to Altenbach himself.  (Id.)

Altenbach also devised a plan to have UCAP sell assets to a "special purpose entity" known as Accent Associates, LLC, and controlled by a UCAP employee.  (Id. ¶ 23.)  UCAP settled litigation over this transaction with cash and stock.  (Id. ¶ 24.)

2.    *Real Estate Transactions*

Altenbach drafted SEC 10K forms which included over $6,000,000 in real estate revenue generated from sales of property to a "special purpose entity" controlled by the control persons.  (Id. ¶ 25.)  Specifically, in December 2000, UCAP purchased the residence of Scott Demerau for $8 million, later refinanced the property, and funneled the funds to insiders and Altenbach.  (Id. ¶¶ 26-27.)  In February 2000, UCAP sold a property for existing debt and

4

UCAP stock.  (Id. ¶ 28.)  Altenbach created an "elaborate note" secured only by the stock and which estimated the value of the property and stock at more than their market prices.  (Id.)  In January 2003, Altenbach authored, reviewed, and published, using financials fraudulently created by UCAP's accounting firm, UCAP's fiscal year 2002 annual report, which included a sale of a lot at Swiss Air for $500,000.  (Id. ¶ 29.)  "Allegedly, the lot had been 'sold' to an insider in exchange for stock that was allegedly owed to the insider."  (Id.)  The transaction allowed UCAP to recognize a profit when no sale actually occurred.  (Id.)

     *3.    Stock Options*

On July 3, 2000, Altenbach authorized and documented a change in the exercise price of stock options approved for issuance on June 30, 2000, changing the issuance date to June 13 at $1.20 per share instead of June 15 at $2.13 per share.  (Id. ¶ 30.)  Altenbach himself profited from this act and hid the expense from shareholders.  (Id.)  On April 20, 2001 and on July 27, 2001, Altenbach authorized, documented, and issued shares and a warrant to McCord for 4,000,000 shares at $0.001 per share, when the stock was trading at $0.60 per share.  (Id. ¶ 31.)  Altenbach did not report the issuance of the stock until December 2001 and did not consider the cost of the shares in the preparation, audit, and release of UCAP's financials.  (Id.)

4.  *Press Releases*

Altenbach reviewed and drafted UCAP press releases, including releases that provided "puffy, misleading information" about UCAP's financial condition.  (Id. ¶ 32.)  Defendants engaged in other acts "in futherance of their conspiracy."  (Id. ¶ 36.)[2]  According to a UCAP officer, Altenbach opposed the filing of an 8-K form disclosing UCAP's financial difficulties.  (Id. ¶ 44.)  In the fall of 2003, Altenbach was given actual notice of significant accounting irregularities.  (Id. ¶ 51.)

In November 2003, Defendants prepared a securities purchase agreement under which Plaintiff Homm agreed to invest $5.1 million in UCAP.  (Id. ¶ 45.)  Defendants failed to disclose to Homm of significant questions and issues relating to accounting transactions and the lack of disclosures by UCAP.  (Id. ¶ 46.)  From November 2003 to April 2004, Homm invested over $4 million in UCAP in a transaction handled by Defendants.  (Id. ¶ 47.)  Defendants did not disclose UCAP's true financial condition, but received compensation from Homm for the transaction.  (Id. ¶¶ 47-48.)

## II.    Standard of Review

---

[2]The acts Plaintiffs allege Defendants committed in paragraph 36 are identical to acts Plaintiffs alleged the control persons committed in their amended complaint in the Arkansas action.  (Compare Compl. ¶ 36(a)-(h)) with Amended Complaint, McAdams v. McCord, No. 6:06-CV-6020-RTD, at 16-17 (W.D. Ark. filed May 17, 2006).

A.    Standard of Review for a Motion to Dismiss

In deciding a motion to dismiss, the Court accepts "the factual allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). "Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint" and is "permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Id. (quotation marks omitted). The Supreme Court recently stated that a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. ___, ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). A complaint must also "state a claim to relief that is plausible on its face." Id. at ___, 127 S. Ct. at 1974.

B.    Standard of Review for Federal Securities Fraud Cases

1.    *Expanded Evidence Considered*

When considering a motion to dismiss in a securities fraud case, the Court may take judicial notice of the contents of relevant public documents that were required to be filed with the Securities Exchange Commission ("SEC") and were actually filed. See Bryant v. Avado Brands, Inc., 187 F.3d

7

1271, 1280 (11th Cir. 1999).  The Court may also consider evidence outside

the pleadings that is undisputedly authentic and on which Plaintiffs

specifically relied in the complaint.  <u>Harris v. Ivax Corp.</u>, 182 F.3d 799, 802

n.2 (11th Cir. 1999).

    *2.*   *Heightened Pleading Requirements*

       To survive a motion to dismiss, allegations of fraud, including claims of

securities fraud under § 10(b) and Rule 10b-5, must satisfy the requirements

of Federal Rule of Civil Procedure 9(b).  <u>See</u> <u>Ziemba v. Cascade Int'l, Inc.</u>, 256

F.3d 1194, 1202 (11th Cir. 2001).  Rule 9(b) requires that allegations of fraud

be pled with particularity.  Fed. R. Civ. P. 9(b).

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what
> statements were made in what documents or oral representations
> or what omissions were made, and (2) the time and place of each
> such statement and the person responsible for making (or, in the
> case of omissions, not making) same, and (3) the content of such
> statements and the manner in which they misled the plaintiff,
> and (4) what the defendants obtained as a consequence of the
> fraud.

<u>Ziemba</u>, 256 F.3d at 1202 (quotation marks omitted).  "A sufficient level of

factual support for a [10b] claim may be found where the circumstances of the

fraud are pled in detail.  This means the who, what, when where, and how:

the first paragraph of any newspaper story."  <u>Garfield v. NDC Health Corp.</u>,

466 F.3d 1255, 1262 (11th Cir. 2006) (quotation marks omitted).

8

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, which reinforces the heightened pleading requirements of Rule 9(b), and imposes additional requirements for plaintiffs in securities fraud cases.  First, the PSLRA requires a plaintiff to specify each statement or omission alleged to be misleading, the reason why the statement or omission is misleading, and the facts surrounding the alleged misrepresentation.  15 U.S.C. § 78u-4(b)(1).  Second, to survive a motion to dismiss, the PSLRA requires plaintiff, "with respect to each act or omission . . . [to] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  If the plaintiff does not satisfy the PSLRA's pleading requirements, then the Court must dismiss the complaint.  See 15 U.S.C. § 78u-4(b)(3)(A).  "Essentially, a private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  In re World Access, Inc. Sec. Litig., 119 F.Supp.2d 1348, 1353 (N.D. Ga. 2000) (Evans, J.).

C.    Elements of Plaintiffs' Claims

Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of

9

any security[,] . . . any manipulative or deceptive device or contrivance in

contravention of such rules and regulations as the [SEC] may prescribe . . . ."

15 U.S.C. § 78j(b).  Rule 10b-5 of the Securities Exchange Commission,

promulgated under Section 10(b) of the Exchange Act, makes it unlawful:

> (a) To employ any device, scheme or artifice to defraud, (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  To state a securities fraud claim under Rule 10b-5, a

plaintiff must demonstrate (1) a misstatement or omission, (2) of a material

fact, (3) made with scienter or intent to defraud, (4) in connection with the

sale of securities, (5) upon which plaintiff relied, and (6) that proximately

caused plaintiff's injury.  Bryant, 187 F.3d at 1281.  To satisfy the scienter

requirement, "a securities fraud plaintiff must plead scienter with particular

facts that give rise to a strong inference that the defendant acted in a severely

reckless manner."  Id. at 1287.

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been

10

aware of it.

Theoharous v. Fong, 256 F.3d 1219, 1224-25 (11th Cir. 2001) (quotations and citations omitted).  Because "claims of securities fraud cannot rest on speculation and conclusory allegations," in order to adequately plead scienter, a complaint must "allege what was said . . ., to whom it was said, or in what context."  Garfield, 466 F.3d at 1265 (quotation marks omitted).

## III.  Discussion

With respect to Plaintiffs' securities fraud and state law fraud claims, the Complaint is grossly deficient on its face.  The overriding requirements of Rule 9(b) and the PSLRA are that fraud must be pled in great detail and with specificity.  Plaintiffs' Complaint fails to provide almost any factual details as to any of its allegations.[3]

Plaintiffs generally point to "false and misleading" press releases and SEC filings, (see Compl. ¶¶ 10-11, 17-19, 25, 29, 32-33, 36), but never identify any individual press releases or filings, when they were published, what statements were false or misleading, and why any such statements were false or misleading, see Garfield, 466 F.3d at 1262.  Plaintiffs also allege that

---

[3]As the parties point out in their supplemental filings, Judge Dawson dismissed, among other things, Plaintiffs' securities fraud and state law fraud claims in the Arkansas litigation for failure to plead the requisite specificity or scienter.  See Order, McAdams v. McCord, No. 6:06-CV-6020-RTD (W.D. Ark. entered Mar. 27, 2007).

Defendants used false and misleading financial reports to hide improper transactions and induce further investment, but fail to specify in any detail what actions Defendants took in creating and circulating the reports, what statements were false, and why such statements were false. (See Compl. ¶¶ 10, 15, 16, 22, 32, 47, 58.)  To the extent Plaintiffs assert Defendants made misleading omissions, "a defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose." Ziemba, 256 F.3d at 1206.  Plaintiffs have not set out any facts to establish any duty of Defendants to disclose.  Indeed, "unless a relationship of 'trust and confidence' exists between a lawyer and a third party, the federal securities laws do not impose on a lawyer a duty to disclose information to a third party." Id. (quotation marks omitted).

The Complaint also fails to set out facts to show that Plaintiffs relied on Defendants' statements or omissions.  "In order for a secondary actor, such as a law firm or accounting firm, to be primarily liable under § 10(b), . . . the alleged misstatement or omission upon which a plaintiff relied must have been publicly attributable to the defendant at the time that the plaintiff's investment decision was made." Id. at 1205.  Other than pro forma recitations of reliance, the Complaint contains no facts showing Plaintiffs' reliance on a statement or omission publicly attributable to

12

Defendants.  (See Compl. ¶¶ 51, 59, 63, 65.)

In addition, the Complaint fails to satisfy the pleading requirement for scienter.   Other than general allegations, which are inadequate, the Complaint does not specify what statements or omissions Defendants made, the context in which any statement or omissions were made, or particular facts that would suggest that Defendants acted in a severely reckless manner. The Complaint's allegations are conclusory and lacking in detail, often simply alleging that Defendants knew their actions were false.  (See Compl. ¶¶ 51, 52, 55, 57, 59.)

Further, Plaintiffs "lump together" Altenbach and Greenberg in many of the Complaint's allegations.  "Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  Bruhl v. Price Waterhousecoopers Int'l, No. 03-23044-Civ-MARRA, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007) (quotation marks omitted); see also Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1017-18 (11th Cir. 2004); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997).  Plaintiffs' failure to specify what actions each Defendant individually took or what statements or

13

omissions each Defendant made and how Plaintiffs relied on those actions, statements, or omissions, is yet another manner in which the Complaint is deficient.

Because the Court finds that the Complaint fails to satisfy Rule 9(b) and Rule 9(b)'s requirements apply to Plaintiffs' claim of state law fraud, the Court **GRANTS** Defendants' motion as to the securities fraud claim and the state law fraud claim.[4]

## IV.   Motion for More Definite Statement

Defendants move for a more definite statement with regard to Counts III and IV of the Complaint.  Defendants argue that (1) it is impossible to determine the Court's jurisdiction over these counts due to the Complaint's failure to allege the citizenship of all parties and (2) the counts fail to sufficiently identify the contract and guaranty described in the counts.

Rule 12(e) provides: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).  The Eleventh Circuit has addressed Rule 12(e) in the context of so-

---

[4]Because the Court finds that the securities fraud and state law fraud claims should be dismissed for pleading failures, the Court need not address Defendants' statute of limitations argument.

called "shotgun" pleadings.  <u>See, e.g.</u>, <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1128-32 (11th Cir. 2001).  Although the Court does not find that Plaintiffs' Complaint is a shotgun pleading, Counts III and IV are sufficiently vague that a more definite statement or repleading is necessary, particularly with respect to the grounds supporting this Court's jurisdiction over Counts III and IV.  Therefore, the Court **GRANTS** Defendants' motion.

## V.    Conclusion

For the reasons above, the Court **GRANTS** Defendants' motion to dismiss [#12] Counts I and II of the Complaint.  The Court also **GRANTS** Defendants' motion for more definite statement [#12].  The Court **DIRECTS** Plaintiffs to file a more definite statement or amended complaint no later than August 24, 2007.  Failure to do so may result in the dismissal of this case.  <u>See</u> Fed. R. Civ. P. 12(e).  Should Plaintiffs elect to file an amended complaint containing a securities fraud claim, the Court advises Plaintiffs to heed the pleading requirements set out above and to consider their obligations under 15 U.S.C. § 78u-4(c).

**SO ORDERED**, this  8th  day of August, 2007.


_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE